IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HERMITAGE INS. CO., | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-0785-N |
| | § | |
| TIMES SQUARE DALLAS, LTD., | § | |
| | § | |
|    Defendant. | § | |

## ORDER

     Before the Court are the parties' cross-motions for summary judgment [25, 36]. This case presents difficult and subtle issues regarding the duty to defend under a contract of insurance. The underlying state court plaintiff initially pled himself out of coverage by alleging conduct falling squarely within the assault exclusion in the insurance policy. He has attempted to plead back into coverage through the simple expedient of excising any reference in his pleading to *how* the injuries at issue took place. The Court must now consider the circumstance in which the underlying facts apparently preclude the duty to defend and coverage, but the pleadings in the underlying lawsuit are now silent on any facts from which the applicability of the assault exclusion could be determined.

     The Court holds that this case falls into the narrow exception permitting extrinsic evidence on the issue of coverage only, and that Plaintiff Hermitage Insurance Company ("Hermitage") can therefore invoke the assault exclusion in the insurance policy through extrinsic evidence. Because the summary judgment record before the Court does not

establish one way or the other whether the injuries in the underlying state court action were the result of an assault, the Court denies both motions for summary judgment.

## I. FACTUAL BACKGROUND

This insurance coverage dispute relates to an underlying state court lawsuit between Matthew Popkin and Times Square Dallas, Ltd. ("TSD"), styled "*Matthew Popkin v. Times Square Dallas, Ltd,. et al.*," No. 05-2578, in the 134th Judicial District Court in Dallas County, Texas (the "Popkin Lawsuit"). According to the Popkin Lawsuit, in 2004, TSD operated a nightclub called Times Square. Around September 3, 2004, Popkin visited Times Square. The bouncers removed him from the club. In Popkin's Original Petition, he alleged that "[a]fter he was physically removed from the building, he was thrown on his head on the concrete resulted [sic] in a subdural hematoma . . . ." On July 20, 2005 (eight days after Hermitage filed its first motion for summary judgment in this case), Popkin filed his First Amended Original Petition in the Popkin Lawsuit. According to Popkin's First Amended Original Petition, "[a]fter he was removed from the building, he suffered a subdural hematoma, which resulted in a lengthy stay in the ICU at Medical City Dallas, as well as other damages." Popkin further alleges that after he suffered the subdural hematoma, TSD "refused to call for medical attention, allowing [Popkin] to lay [sic] on the concrete outside." Popkin seeks the same damages from TSD for all of his various claims of negligence, including: "failing to adequately evaluate candidates for its staff positions; employing unfit persons; failing to adequately supervise its employees; failing to adequately train its employees; failing to adequately staff its premises and failing to provide safe premises and

a safe environment for invitees." Popkin also claims TSD is vicariously liable for the (unspecified) negligence of its bouncers and negligently failed to render aid to Popkin.

Hermitage and TSD entered into a contract of insurance applicable during the pertinent times (the "Policy"). The Policy was written on the 2000 ISO Commercial General Liability Coverage Form, CG 00 01 10 01. The insuring agreement provides in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any " suit" seeking damages for "bodily injury" or "property damages" to which this insurance does not apply.

The Policy also contained an exclusion for assault and/or battery (the "Assault Exclusion"), as follows:

> Assault and/or battery shall not be deemed an accident under the above mentioned policy. The Company shall not be obligated to pay on behalf of or defend the insured for any claim alleging an assault and/or battery no matter how the assault and/or battery is alleged to have occurred.
>
> It is understood and agreed that this insurance does not apply to **"bodily injury"** or **"property damage"** arising or alleged to arise out of:
> A)   An assault and/or battery caused by or at the instigation or direction of:
> 1.   the insured, his agent or employee;
> 2.   any patron of the insured; or
> 3.   any other person; . . .

(emphasis in original)

Hermitage originally moved for summary judgment on the basis that Popkin's original petition established the applicability of the Assault Exclusion. While that motion was

pending, Popkin amended his petition in the Popkin Lawsuit, and the Court denied Hermitage's motion without prejudice. Hermitage now reurges its motion for summary judgment in light of Popkin's First Amended Original Petition, and TSD urges its cross-motion for summary judgment.

## II. EXTRINSIC EVIDENCE IS PERMISSIBLE

### A. *Texas Law Provides a Narrow Exception for Extrinsic Evidence*

The Court must first determine whether it can consider extrinsic evidence in deciding whether Hermitage must defend TSD in the Popkin Lawsuit. Two recent cases, one from the Texas Supreme Court and one from the Fifth Circuit, show that this case is within the narrow exception to the "eight corners" rule that permits consideration of extrinsic evidence applicable solely to coverage. The eight corners rule generally provides that the duty to defend is determined only by comparing the pleadings from the underlying lawsuit (four corners) to the insurance policy (four more corners) to see if any of the claims asserted against the insured fall within the scope of coverage, regardless of the truth or falsity of the asserted claims. *See, e.g.*, *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex. 1973). In *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.2d 305 (Tex. 2006), the Texas Supreme Court decided not to create an exception to the eight corners rule for extrinsic evidence that is "mixed," i.e., that is relevant both to coverage and to the merits of the underlying case. *Id.* at 310-11. In so holding, the court cited with approval a Fifth Circuit case predicting that if the Texas Supreme Court ever adopted any exception, it would be narrow and limited to "coverage only" extrinsic evidence. *Id.* at 308-09 (quoting

*Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir. 2004)). Thus, although the Texas Supreme Court did not expressly hold that Texas law has such a narrow exception for extrinsic evidence, it is persuasive authority that the Court would find one if the question were squarely presented.

In *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596 (5th Cir. 2006), the Fifth Circuit considered whether the trial court had properly considered extrinsic evidence in light of *GuideOne*. The issue was whether the defendant in the underlying state court lawsuit was a permissive user of a vehicle involved in an accident. The federal district court admitted extrinsic evidence on this issue to determine coverage. The Court of Appeals reversed, holding that such admission was error after *GuideOne* (which came out after the district court's decision). In so doing, the Court referred to "the limited exception to the eight corners rule applied by some Texas appellate courts and approved in the *GuideOne* decision's dicta." *Id.* at 602. The Court explained that *Int'l Serv. Ins. Co. v. Boll*, 392 S.W.2d 158 (Tex. Civ. App. – Houston 1965, writ ref'd n.r.e.) "and other Texas intermediate court decisions allowing extrinsic evidence to establish a lack of coverage are distinguishable because they involved explicit policy coverage exclusion clauses, the applicability of which could not be established under the allegations of the complaint but rather required reference to unrelated but readily ascertainable facts." *Id.* at 603 (footnote omitted).

The Court concludes from *GuideOne* and *Liberty Mut. v. Graham* that, under Texas law, there is an exception to the eight corners rule "when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to

ORDER – PAGE 5

a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Northfield*, 363 F.3d at 531 (emphasis in original).[1]

### *B. The Extrinsic Evidence Exception Applies Here*

Having determined that Texas law provides for a limited exception, the Court must now determine whether the exception applies here. First the Court must determine whether it is initially impossible to discern whether coverage is potentially implicated. Restated, can the Court here decide the duty to defend question without resort to extrinsic evidence? Next the Court must determine whether the extrinsic evidence relates to coverage only, or whether it is mixed with the merits.

*1. The Duty to Defend Cannot Be Resolved Without Consideration of Extrinsic Evidence.* – Hermitage argues essentially that Popkin's amended petition fails to state a claim against TSD and that, therefore, it has no duty to defend. Hermitage Brief at 6 ("Obviously if it is patently clear that the *nightclub* could not be liable to the patron, then the *insurer* cannot be liable to the nightclub."). Hermitage confuses the contractual duty to indemnify with the contractual duty to defend. While it may be true that if Popkin cannot recover from TSD, Hermitage would have no obligation to indemnify TSD, it does not necessarily follow that Hermitage has no duty to defend. *See GuideOne*, 197 S.W.3d at 310

---

[1]*Accord* Ellen S. Pryor, *Mapping the Changing Boundaries of the Duty to Defend in Texas*, 31 TEX. TECH L. REV. 869, 891 (2000); *see also* Randall L. Smith & Fred A. Simpson, *Extrinsic Facts and the Eight Corners Rule Under Texas Law – The World Is Not as Flat as Some Would Have You Believe*, 46 S. TEX. L. REV. 463 (2004) (arguing for more relaxed application of eight corners rule) [hereinafter cited as Smith & Simpson].

(factual allegations control duty to defend, while actual facts established at trial of underlying case control duty to indemnify).  Put differently, if Hermitage were correct, it would have a duty to defend only liable insureds.  Instead, under the eight corners rule, Hermitage must defend "[i]f the four corners of a petition allege facts stating a cause of action which potentially falls within the four corners of the policy's scope of coverage."  *Liberty Mut. v. Graham*, 473 F.3d at 600.

Here Popkin's amended petition facially implicates coverage.  It alleges negligent acts by TSD and its employees that caused bodily injury to Popkin.  Thus, Hermitage cannot negate the duty to defend and coverage without resort to extrinsic evidence.

Conversely, TSD cannot establish that no matter what extrinsic evidence might show, Hermitage owes it a defense.[2]  TSD argues that, regardless of the Assault Exclusion, Popkin's failure to render aid claim would be covered and thus trigger a duty to defend, citing *Western Heritage Ins. Co. v. Estate of Dean*, 55 F. Supp. 2d 646 (E.D. Tex. 1998).  In *Western Heritage*, a bar patron became intoxicated and got into a fight, in which he was severely beaten in the head.  He fell to the ground.  The bar employees, rather than calling for medical aid, left the patron on the floor to "sleep it off."  Almost an hour later, another patron saw the injured patron and demanded that emergency help be summoned.  By the time paramedics arrived, the injured patron had died.  *See id.* at 647.  Under those circumstances, the *Western Heritage* court found that the failure to render aid claim stated a cause of action

---

[2]Of course, the fact that Popkin's amended petition facially implicates coverage does not answer the question either, precisely because it does not address the Assault Exclusion.

independent of the assault, with separate damages, and thus triggered a duty to defend. *See id.* at 650 (quoting RESTATEMENT (SECOND) OF TORTS § 314, illus. 5; "As a result [of failure to render aid], A's illness is aggravated in a manner which reasonably prompt medical attention would have avoided."); *id.* at 651 ("While the Court finds the other claims in the underlying suit would not exist 'but for' the excluded perils, the failure to render aid cause of action is separate and independent."). TSD argues that, following *Western Heritage*, Popkin's failure to render aid claim triggers a duty to defend, even if the negligence claims are excluded by the Assault Exclusion.

But *Western Heritage* is distinguishable on its facts. As recited above, Popkin does not allege any distinct harm or aggravation of his injuries because of the failure to render aid. It is well-established that in determining whether a claim is covered, the courts look to the facts at issue, rather than the legal theory pled by the underlying plaintiff. *See, e.g.*, *id.* at 648. Here the facts alleged do not state a separate and independent claim for failure to render aid, with separate damages. Accordingly, *Western Heritage* does not give rise to a duty to defend.[3]

TSD also relies on *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185 (Tex. 2002). In *King*, the Texas Supreme Court held that an intentional act by an employee can still be a covered occurrence from the perspective of the employer. TSD argues that, by analogy from *King*,

---

[3]Because *Western Heritage* is factually distinguishable from this case, the Court need not decide whether it would follow *Western Heritage* if it had to decide that question. At present, no other reported decision has followed, or even cited to, *Western Heritage*. Suffice it to say that in distinguishing *Western Heritage*, this Court is not endorsing it.

ORDER – PAGE 8

conduct that may be an excluded assault from the perspective of the employee committing the assault, may still be a covered occurrence from the perspective of the employer.

*King*'s holding is inapplicable here for many reasons. Most significantly, the analysis there turned in part on "standpoint of the insured" language in the intentional acts exclusion that is not at issue in this case. *See id.* at 188-89. Thus acts that might be intentional (and excluded) from the standpoint of an employee could still be accidental (and covered) from the standpoint of the employer. To the contrary here, the Assault Exclusion explicitly provides that it applies *even if an employee commits the assault*. *See supra* p.3 (Assault Exclusion applies to assault by "the insured, his agent *or employee*," "any patron," or "any other person") (emphasis added). Moreover, *King* dealt with the definition of occurrence, not an exclusion. The court observed this distinction several times in its opinion, noting that narrow readings of occurrence proposed by the carrier would make exclusions in the policy surplusage. *See, e.g.*, *id.* at 189. Finally, *King* implicitly acknowledged that under its holding, an event that might be an occurrence from the perspective of the employer could still be excluded by the Assault Exclusion. *See id.* at 193 ("under Dallas Fire's construction, there would be no need for exclusions covering assault and battery . . ."). Accordingly, *King* does not require a holding here that the Assault Exclusion applies only to the duty to defend the employee(s) who committed the assault.

Thus, TSD cannot establish the existence of a duty to defend independent of any consideration of extrinsic evidence, and the first requirement of the exception is met.

*2. Extrinsic Evidence of the Assault Exclusion Is Independent of the Merits of Popkins' Claims.* – Resolution of this question is easier, given Popkin's deliberate excision of any reference to an assault from his amended petition. According to Popkin's amended petition, *how* he ended up on the ground with a subdural hematoma is irrelevant. Thus, extrinsic evidence on that issue does not bear on the merits of Popkin's claims. Likewise, because nothing in Popkin's amended petition addresses how he was injured, extrinsic evidence on that issue would not "engage the truth or falsity of any facts alleged in the underlying case." *Northfield*, 363 F.3d at 531.

Accordingly, both factors of the limited exception are met here, and extrinsic evidence regarding whether Popkin's injuries were caused by conduct that fell within the Assault Exclusion of the policy is permissible to consider in determining whether Hermitage has a duty to defend TSD.[4]

---

[4]Having determined that extrinsic evidence on the Assault Exclusion is permissible even under the eight corners rule, the Court need not confront a much more difficult, and significant, question: Does the change from older policy language regarding the duty to defend, such as that in *Heyden*, to contemporary policy language, such as that here, also changed the eight corners rule? While the eight corners rule may seem to Texas coverage lawyers to be of provenance comparable to that of the Ten Commandments, that in fact is not the case. The eight corners rule is simply a judicial gloss on particular contractual language giving rise to the duty to defend. It is not heretical to suggest that a significant change in the contractual language might also effect change in the judicial interpretation of that language. At least one court and one article have so argued. *See B. Hall Contracting, Inc. v. Evanston Ins. Co.*, 447 F. Supp. 2d 634 (N.D. Tex. 2006) (appeal pending); Smith & Simpson, *supra*, at 481-85. This Court will not unnecessarily venture into that thicket.

### III. FACT ISSUES PRECLUDE SUMMARY JUDGMENT

Unfortunately, having determined that the Court can consider extrinsic evidence in determining the applicability of the Assault Exclusion, the Court must deny both motions for summary judgment. There is no record before the Court that establishes affirmatively one way or the other whether Popkin's injuries were the result of an assault. The record does include Popkin's original petition, but that pleading has now been superseded by his amended petition. *Compare Sosa v. Central Power & Light Co.*, 909 S.W.2d 893, 895 (Tex. 1995) ("Contrary to statements in live pleadings, those contained in superseded pleadings are not conclusive and indisputable judicial admissions.") *with MBank Brenham, N.A. v. Barrera*, 721 S.W.2d 840, 842 (Tex. 1986) (superseded pleading may "be introduced into evidence as any other admission" and considered as evidence). Thus, while Popkin's original petition may be some evidence that an assault took place, it does not conclusively establish that for summary judgment purposes.

### CONCLUSION

The Court wishes it were able to dispose of this case on the parties' cross-motions for summary judgment, but on this record that is not possible. Accordingly, the Court denies both motions for summary judgment. It may be, however, that the parties can present additional summary judgment proof that would resolve this issue without the need for a trial. The Court, therefore, grants the parties leave to file an additional motion for summary judgment directed to extrinsic evidence within forty-five (45) days of the date of this Order,

if either or both sides believe this the question is amenable to summary disposition. If no such motion is filed within that time, the Court will by separate order set this matter for trial.

Signed March 9, 2007.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 12